[Docket No. 1]

**IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF NEW JERSEY CAMDEN VICINAGE**

| | |
|---|---|
| CASSANDRA WAITERS, CYLE BURNETT, VICKIE BURNETT-WILLIAMS,<br><br>Plaintiffs,<br><br>v.<br><br>REPUBLIC BANK, CHERRY HILL POLICE DEPARTMENT,<br><br>Defendants. | Civil No. 25-15271 (RMB-MJS)<br><br>**OPINION** |

**RENÉE MARIE BUMB, Chief United States District Judge**

**THIS MATTER** comes before the Court upon the filing of a Complaint and application to proceed *in forma pauperis* ("**IFP**") by *pro se* plaintiff Cassandra Waiters ("Waiters"). The IFP application establishes Waiters' financial eligibility to proceed without prepayment of the filing fee and will be granted. Her co-plaintiffs, Cyle Burnett ("Burnett"), and Vickie Burnett-Williams ("Burnett-Williams") (together with Waiters, "**Plaintiffs**") did not complete their own IFP applications. They must do so for the Court to determine whether each of the Plaintiffs is economically eligible to proceed on an IFP basis. *Johnson v. Camden Cnty. Warden*, 2023 WL 2238110, at *1 (D.N.J. Feb. 24, 2023) (under 28 U.S.C. § 1915, "each plaintiff must submit a complete application to proceed *in forma pauperis* if he desires the complaint to be filed on his behalf"); *see also Hickson v. Mauro*, 2011 WL 6001088, at *1 (D.N.J. Nov. 30, 2011)

(“Although Section 1915 refers to ‘prisoners’, federal courts apply Section 1915 to non-prisoner IFP applications.”). Accordingly, the Court will administratively terminate Burnett and Vickie Burnett-Williams from this case pending receipt of their own IFP applications.

## I. SCREENING FOR DISMISSAL

When a person files a complaint and is granted IFP status, 28 U.S.C. § 1915(e)(2)(B) requires courts to review the complaint and dismiss claims that are: (1) frivolous or malicious; (2) fail to state a claim on which relief may be granted; or (3) seek monetary relief against a defendant who is immune from such relief. Courts, however, must liberally construe pleadings that are filed *pro se*. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007). The legal standard for dismissing a complaint for failure to state a claim, pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii), is the same as that for dismissal under Federal Rule of Civil Procedure 12(b)(6). *See Schreane v. Seana*, 506 F. App’x 120, 122 (3d Cir. 2012). “To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to ‘state a claim to relief that is plausible on its face.’” *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). “A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.” *Id.* (citing *Twombly*, 550 U.S. at 556).

*Pro se* complaints are to be “liberally construed” and are “held to less stringent standards than formal pleadings drafted by lawyers.” *Erickson*, 551 U.S. at 94. Although *pro se* pleadings are to be liberally construed, “*pro se* litigants still must allege

sufficient facts in their complaints to support a claim." *Owens v. Armstrong*, 171 F.Supp.3d 316, 328 (D.N.J. 2016) (quoting *Mala v. Crown Bay Marina, Inc.*, 704 F.3d 239, 245 (3d Cir. 2013)). Thus, *pro se* litigants are not exempt from complying with federal pleading standards. *See Thakar v. Tan*, 372 F.App'x 325, 328 (3d Cir. 2010).

## II. SUBJECT MATTER JURISDICTION

The Court has an independent obligation to satisfy itself of its subject matter jurisdiction, and the Court "always has jurisdiction to determine its [own] jurisdiction." *Zambelli Fireworks Mfg. Co. v. Wood*, 592 F.3d 412, 418 (3d Cir. 2010) (citing *United States v. Ruiz*, 536 U.S. 622, 628 (2002)). "A federal court has subject matter jurisdiction over civil actions arising under 'the Constitution, laws, or treaties of the United States' (federal question jurisdiction) and civil actions between citizens of different states with the amount in controversy exceeding the sum or value of $75,000 (diversity jurisdiction)." *Rockefeller v. Comcast Corp.*, 424 F. App'x 82, 83 (3d Cir. 2011) (citing 28 U.S.C. §§ 1331, 1332(a)).

Plaintiffs assert that the Court has federal question jurisdiction over the claims asserted. [Docket No. 1 at 2.] "Federal question jurisdiction exists only if a federal question is presented on the face of the complaint." *Rockefeller*, 424 F. App'x at 83 (citing *Club Comanche, Inc. v. Gov't of V.I.*, 278 F.3d 250, 259 (3d Cir. 2002)). Plaintiffs purport to set forth violations of federal statutes prohibiting civil rights violations. At

this stage, the Court is satisfied as to the subject matter jurisdiction upon federal question jurisdiction only.[1]

## III. PROCEDURAL AND FACTUAL BACKGROUND

Plaintiffs filed an initial Complaint and application to proceed in forma pauperis on April 29, 2024, in 24-cv-5728. This Court granted Waiters' IFP application, ordered that the Complaint's sole Title II count was dismissed with prejudice, administratively terminated Burnett and Burnett-Williams from this action pending receipt of their applications to proceed IFP, and closed the case. [Docket Nos. 2, 3 in 24-cv-5728.] Plaintiffs now bring similar factual allegations but different causes of action against Republic Bank (the "**Bank**") and the Cherry Hill Police Department ("**Police Department**") (collectively, "**Defendants**") in this case. [Docket No. 1.] Although the Court previously dismissed Plaintiffs' Title II claim, the present Complaint asserts additional causes of action not previously addressed, which the Court will screen pursuant to 28 U.S.C. § 1915(e)(2)(B). The Complaint asserts the following claims against the Defendants.

[1] The Court lacks diversity jurisdiction here. Critically, under 28 U.S.C. § 1332, there must be *complete* diversity of citizenship among the parties, meaning each plaintiff is domiciled in a different state than each defendant, and the amount in controversy exceeds $75,000. The citizenship of each party must be specifically alleged. *Martin v. Aurora Fin. Grp., Inc.*, 2024 WL 1485461, at *3 (D.N.J. Apr. 5, 2024) (citing *S. Freedman & Co. v. Raab*, 180 F. App'x 316, 320 (3d Cir. 2006)). Complete diversity, however, does not exist here. Plaintiffs are alleged to be citizens of New Jersey, as are Defendants Republic Bank and the Cherry Hill Police Department. As complete diversity of citizenship is lacking, the Court does not have subject matter jurisdiction over this litigation based upon diversity of citizenship.

Count I: 42 U.S.C. § 1981 (“Section 1981”) Claim Against the Bank [Docket No. 1-1 at 2.]

Count II: Defamation Claim Against the Bank [*Id.*]

Count III: 42 U.S.C. § 1983 (“Section 1983”) Fourth Amendment Claim Against Police Department and Officers [*Id.*]

Count IV: Section 1983 Fourteenth Amendment Claim Against Police Department and Officers [*Id.*]

Count V: 42 U.S.C. § 1985(3) (“Section 1985”) Claim Against All Defendants [*Id.*]

Plaintiffs seek compensatory damages in the amount of $250,000 per Plaintiff, and punitive damages in the amount of $500,000 per Plaintiff against each Defendant. [Docket No. 1 at 5.]

Plaintiffs allege that on or about December 28, 2022, Waiters, who is a customer of the Bank and worked across the street from it, used the ATM but did not withdraw funds. [*Id.* at 4.] Burnett and Burnett-Williams parked in the Bank’s lot while waiting for her on lunch break. [*Id.*] It is unclear whether this was the same occurrence which Plaintiffs also allege occurred on December 28, 2022, in which Waiters asked Burnett and Burnett-Williams whether she could stop at the Bank’s ATM to check her account and see whether she had gas money to give Burnett and Burnett-Williams. [*Id.* at 8.] Waiters claims she checked her account balance but did not withdraw any money, left the ATM, returned to the car, and left the Bank. [*Id.*] The Bank “falsely reported” Plaintiffs as “staking out the bank.” [*Id.* at 4.] Based on this report, two police officers, Officer Jared Fox (“Officer Fox”) and Officer S. Valentino (“Officer Valentino”), stopped Plaintiffs on December 29, 2022, regarding a suspicious vehicle. [*Id.* at 4, 7.]

Officer Valentino asked Burnett-Williams for her driver's license, insurance, and registration, and Officer Fox asked for Waiters and Williams licenses, which they provided. [*Id.* at 7.] Plaintiffs were asked where they were coming from and going to, to which Waiters replied that Burnett-Williams and Burnett were picking her up from work, located directly across the street from the Bank, and that they were on their way home. [*Id.*] Officer Fox asked if they had been to the Bank that day to which Plaintiffs replied no. [*Id.*] Officer Fox explained he had received a call from the Bank, stating that a suspicious vehicle, matching the description of Burnett-Williams' vehicle, had been parking in their lot for a few days. [*Id.* at 8.] Officer Fox again asked if Plaintiffs had been parked in the Bank parking lot that day, which they again expressed they had not. [*Id.*] Waiters stated that Burnett-Williams and Burnett pick her up and drop her off at work each day and would park at her job. [*Id.*] One of the officers told Plaintiffs that the Bank was not sure whether they were planning a robbery or canvassing the bank. [*Id.*] Officer Fox told Plaintiffs they would not be receiving any tickets, nor were they being charged with any crimes, but that they were not to return to the Bank. [*Id.*]

After the stop, Plaintiffs went to the Cherry Hill Police Department to inquire about the incident report, which they received weeks later. [*Id.*] Plaintiffs allege that they noticed some discrepancies. [*Id.*] The Bank alleged that Plaintiffs had been parking in their lot for the past few days, which was incorrect. [*Id.*] Waiters alleges

that she is an account holder with the Bank since 2017 and frequented the Bank on multiple occasions. [*Id.*]

Plaintiffs claim that Defendants' actions were motivated by discriminatory animus based on race and/or protected status. [*Id.* at 6.] Plaintiffs claim they were falsely accused of criminal behavior, subjected to an unlawful police stop, and denied equal access to banking services. [*Id.* at 5.] Moreover, Plaintiffs claim to have suffered emotional distress, humiliation, mental anguish, reputational harm, and denial of services as a result of Defendants unlawful conduct. [*Id.*]

## IV. ANALYSIS

### A. <u>Count I: 42 U.S.C. § 1981</u>

Plaintiffs claim the Bank violated Section 1981 by "intentionally discriminat[ing] against Plaintiffs in making, performance, and enjoyment of contractual services (banking relationship)." [*Id.* at 2.]

Section 1981 "prohibits racial discrimination in the making and enforcement of contracts[.]" *Brown v. Philip Morris Inc.*, 250 F.3d 789, 796 (3d Cir. 2001) (quoting 42 U.S.C. § 1981(a)). The statute defines the "mak[ing] and enforc[ing] [of] contracts" as "the making, performance, modification, and termination of contracts, and the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship." *Thomas v. U-Haul Co.*, 2024 WL 4501566, at *2 (D.N.J. Oct. 15, 2024) (citing 42 U.S.C. § 1981(b)). "While plaintiffs typically assert § 1981 claims in the context of employment contracts, claims may also arise in the retail context." *Id.*

(citing *Carter v. Bentley Motors Inc.*, 489 F. Supp. 3d 316, 322 (D.N.J. 2020) (internal citations omitted)).

To bring a claim under § 1981, Plaintiffs must plausibly allege: (1) that they "belong[ ] to a racial minority; (2) an intent to discriminate on the basis of race by [Defendants]; and (3) discrimination concerning one or more of the activities enumerated in § 1981[,]" like making and enforcing contracts. *Est. of Oliva ex rel. McHugh v. New Jersey*, 604 F.3d 788, 797 (3d Cir. 2010) (citing *Pryor v. Nat'l Collegiate Athletic Ass'n.*, 288 F.3d 548, 569 (3d Cir. 2002)). Section 1981 requires plaintiffs to "initially plead ... that, but for race, [they] would not have suffered the loss of a legally protected right." *Comcast Corp. v. Nat'l Ass'n of Afr. Am.-Owned Media*, 589 U.S. 327, 341 (2020).

Plaintiffs are "not required to prove discriminatory intent at the motion to dismiss stage, rather [they] need only put forth allegations that raise a reasonable expectation that discovery will reveal evidence of [it]." *Bagic v. Univ. of Pittsburgh*, 773 F. App'x 84, 87 (3d Cir. 2019) (quotations omitted). Plaintiffs may show intent to discriminate through "direct evidence of discrimination from statements or actions by [defendants] suggesting racial animus." *Thomas*, 2024 WL 4501566, at *3 (quoting *Emery v. Uber Techs., Inc.*, 2021 WL 941879, at *4 (D.N.J. Mar. 12, 2021), *aff'd sub nom. Uber Driver Partner Emery v. Uber Techs. Inc.*, 2022 WL 1196700 (3d Cir. Apr. 22, 2022) (internal citations omitted)). However, Defendants do not plead any facts that even hint at racial animus, except for the conclusory statement that "Defendants' actions were motivated by discriminatory animus based on race and/or protected status."

[Docket No. 1 at 6.] There are no allegations in the Complaint that raise a reasonable expectation that discovery will reveal that Defendants intended to discriminate against Plaintiffs on the basis of race. *See Pryor*, 288 F.3d at 569.

Plaintiffs also fail to plausibly allege the third element. The Complaint alleges Waiters maintained a banking relationship and successfully used the Bank's ATM to check her account balance the day before the events giving rise to this action. [Docket No. 1 at 4, 8.] The Complaint does not allege that the Bank denied Plaintiffs banking services, terminated the banking relationship, or otherwise impaired the conditions of that relationship. Instead, Plaintiffs allege only that, after the encounter with law enforcement, police officers instructed them not to return to the Bank. [*Id.* at 8.] Significantly, the Complaint does not allege that the Bank directed the officers to issue that instruction, that the Bank itself prohibited Plaintiffs from returning, or that Plaintiffs thereafter attempted to obtain banking services and were denied because of their race.

Accordingly, Count I fails to state a claim upon which relief can be granted and will be dismissed.

### B. Counts III & IV: 42 U.S.C. § 1983

Plaintiffs claim the Police Department and the Police Officers violated Section 1983 by stopping Plaintiffs without reasonable suspicion or probable cause, constituting unlawful seizure. [Docket No. 1-1 at 2.] Plaintiffs also claim the Police Department and Police Officers acted with discriminatory intent depriving Plaintiffs of Equal Protection of the laws. [*Id.*]

The Complaint names the Cherry Hill Police Department as a defendant but does not identify Officer Fox or Officer Valentino as defendants in the caption or in the section identifying the parties. [Docket No. 1 at 1–2.] *See* Fed. R. Civ. P. 10(a). Accordingly, the Complaint does not assert claims against those officers in their individual capacities.

Moreover, to the extent Plaintiffs intended to assert official capacity claims against Officer Fox or Officer Valentino, such claims are treated as claims against the municipality itself. *Kentucky v. Graham*, 473 U.S. 159, 165–66 (1985). Plaintiffs must show that the municipality implemented a policy, ordinance, regulation, or custom which caused the deprivation of that plaintiff's rights. *See Monell v. Dep't of Soc. Servs.*, 436 U.S. 658 (1978). The Complaint contains no factual allegations that the officer's conduct resulted from an official municipal policy, custom, or practice, as required by *Monell*. Accordingly, any official capacity claims fail to state a claim.

Finally, the Police Department must be dismissed because it is a "governmental sub-unit[s] that [is] not distinct from the municipality of which [it is] a part." *See Jackson v. City of Erie Police Dep't*, 570 F. App'x 112, 114 n.2 (3d Cir. 2014) (holding that the district court correctly dismissed the police department because it was not a "person" against whom a suit could be lodged under § 1983). Accordingly, Counts III and IV will be dismissed without prejudice.

**C. Count V: 42 U.S.C. § 1985(3)**

Plaintiffs claim all Defendants breached Section 1985 when they conspired to deprive Plaintiffs of equal protection by coordinating false reports and unlawful stops.

[Docket No. 1-1 at 2.] Section 1985 of the Civil Rights Act is a conspiracy statute. 42 U.S.C. § 1985(3). Like Section 1983, Section 1985(3) "provides no substantive rights itself; it merely provides a remedy for violation of the rights it designates." *Great Am. Fed. Sav. & Loan Ass'n v. Novotny*, 442 U.S. 366, 372 (1979). To prove that Defendants engaged in a conspiracy in violation of Section 1985, Plaintiffs must allege (1) a conspiracy involving two or more persons; (2) that one or more of the conspirators performed or caused to be performed an overt act in furtherance of the conspiracy; and (3) that the overt act injured plaintiffs in their person or property, or deprived plaintiffs of any right or privilege of a citizen of the United States. *Barnes Found. v. Twp. of Lower Merion*, 242 F.3d 151, 162 (3d Cir. 2001) (citing *Griffin v. Breckenridge*, 403 U.S. 88, 102–03 (1971)). Plaintiffs must also allege that the conspiracy was motivated by "some racial, or perhaps otherwise class-based, invidiously discriminatory animus." *Griffin*, 403 U.S. at 102. Section 1985(3) provides for causes of action against both state and private actors. *Novotny*, 442 U.S. at 371–72; *Barnes*, 242 F.3d at 162.

Plaintiffs, however, provide no more than conclusory allegations as to the formulation of the purported conspiracy between the Defendants. And, Plaintiffs set forth no well-pled factual allegations regarding Defendants' alleged discriminatory animus. Such conclusory and formulaic allegations are insufficient to state a Section 1985(3) claim. *Twombly*, 550 U.S. at 555; *see also Alford v. Plumeri*, 2024 WL 2933194, at *8 (D.N.J. June 11, 2024) (dismissing Section 1985 claim where plaintiff "has not alleged the elements of such a claim in a non-conclusory manner."); *Baldwin v. Brown*, 2019 WL 1589968, at *11 (D.N.J. Apr. 12, 2019) (dismissing Section 1985 claims as

conclusory where complaint failed to adequately allege agreement by defendants to violate plaintiff's rights or facts suggesting discriminatory motive). Accordingly, Count V will be dismissed without prejudice.

### D. Count II: Defamation

In addition to their federal law claims, Plaintiffs assert a state law claim for defamation against the Bank. The Court has determined that it lacks diversity jurisdiction over this matter. *See supra* note 1. Thus, with no other properly pled federal claims appearing on the face of Plaintiffs' Complaint and no other basis for this Court's original jurisdiction, the Court declines to exercise supplemental jurisdiction over any state law claims at this time. 28 U.S.C. § 1367(c)(3). The Court finds no extraordinary circumstances warranting an exercise of supplemental jurisdiction over those claims. *Hedges v. Musco*, 204 F.3d 109, 122–24 (3d Cir. 2000) (affirming district court's decision not to exercise supplemental jurisdiction over state law claim after all federal claims were dismissed and noting that district court "must decline to decide [ ] pendent state claims unless considerations of judicial economy, convenience, and fairness to the parties provide an affirmative justification for doing so."). Plaintiffs are free to bring such claims in state court, although this Court makes no finding as to the merits or procedural posture of such claims.[2]

---

[2] The Court further notes that, even if it were to exercise supplemental jurisdiction, Plaintiffs' defamation claim appears to be subject to New Jersey's one-year statute of limitations for defamation actions. *See* N.J. Stat. Ann. § 2A:14-3; *Smith v. Datla*, 164 A.3d 1110, 1116–17 (N.J. Super. App. Div. 2017) ("Claims for defamation are subject to the one-year statute of limitations imposed by N.J.S.A. 2A:14-3, and must be filed

## V. CONCLUSION

For the reasons stated above, the Court will **GRANT** Waiters' IFP application, and the Complaint is **DISMISSED WITHOUT PREJUDICE** as to Waiters. Plaintiff may amend her Complaint to remedy the deficiencies identified herein within thirty (30) days. Should Plaintiff fail to timely do so, this matter will be deemed dismissed with prejudice. The Court will **ADMINISTRATIVELY TERMINATE** this case, subject to reopening upon the filing of a timely amended complaint by Waiters and, as to Burnett and Burnett-Williams, payment of the filing fee or submission of a completed IFP application. An appropriate Order follows.

**August 3, 2026**
Date

**s/Renée Marie Bumb**
RENÉE MARIE BUMB
Chief United States District Judge

within one year after the publication of the alleged libel or slander.") (citing *Rumbauskas v. Cantor*, 649 A.2d 853, 858 (N.J. 1994)).